UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DR. J. DAVID GOLUB,

                    Plaintiff,                 19-cv-10309 (JGK)

           - against -                         MEMORANDUM
                                               OPINION AND ORDER
BERDON LLP,

                    Defendant.

---

JOHN G. KOELTL, District Judge:

The pro se plaintiff, Dr. J. David Golub, brought this action against Berdon LLP ("Berdon") alleging violations of the Age Discrimination in Employment Act ("ADEA") and other state and federal statutes. Berdon filed a motion to dismiss the plaintiff's Amended Complaint, which the Court granted in a Memorandum Opinion and Order dated February 17, 2021. See Golub v. Berdon LLP, No. 19-cv-10309, 2021 WL 637974 (S.D.N.Y. Feb. 17, 2021) (the "MTD Order"). In the MTD Order, the Court dismissed the plaintiff's claims without prejudice and afforded the plaintiff the opportunity to "file a motion to file an amended complaint together with a copy of the proposed amended complaint and an explanation why such filing is not futile." Id. at *5.

On April 9, 2021 the plaintiff filed a Second Amended Complaint ("SAC") in which the plaintiff repeated many of the allegations set forth in the Amended Complaint. In the SAC, the

plaintiff brought claims arising under the ADEA, the Taxpayer First Act ("TFA"), and state law. Berdon now moves dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] For the reasons explained below, the motion to dismiss is **granted in part and denied in part**.

## I

The Court assumes familiarity with the alleged facts of this case, which are set forth in detail in the SAC and the MTD Order. See 2021 WL 637974, at *1-2. The following facts are drawn from the SAC and are accepted as true for the purposes of resolving this motion.

In brief, the plaintiff worked as a tax accountant at Berdon, a limited-liability partnership focused on audit, tax, and consulting services. SAC ¶ 7. Berdon engaged the plaintiff initially as a consultant from July 2017 to March 2018 to facilitate a merger with another accounting firm, and then as an employee pursuant to a contract until his termination in July

---

[1] Berdon styled its motion as a motion to dismiss pursuant to Rule 12 and/or a motion to deny the plaintiff leave to file the SAC on futility grounds pursuant to Rule 15. Because the plaintiff filed the SAC without an accompanying motion to amend, the Court will treat the present motion as a Rule 12 motion. In any event, irrespective of whether the Court analyzed the motion as one arising under Rule 12 or Rule 15, the same legal standard applies. See, e.g., Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) ("A proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim on which relief could be granted.").

2018. Id. ¶¶ 11-12. At the time of his discharge, the plaintiff was over the age of 40 and had over 40 years of experience in accounting. Id. ¶¶ 2, 6.

In July 2018, the plaintiff complained to Berdon's managing tax partner about alleged professional misconduct of a colleague, B.S. Id. ¶¶ 12, 20-26. In particular, the plaintiff alleged that B.S. submitted fraudulent filings to the Internal Revenue Service ("IRS") and state government agencies. Id. Shortly thereafter, Berdon terminated the plaintiff's employment. Id. ¶¶ 24-26. When the plaintiff asked for the grounds for his termination, Berdon's managing tax partner stated that he heard a recording of the plaintiff reprimanding B.S. using abusive language. Id. ¶ 19. Another employee stated that there was "an office cultural divide or disconnect and that [the plaintiff] was not a 'team player.'"[2] Id. The plaintiff alleges that Berdon ignored the issues that the plaintiff raised about B.S. and terminated the plaintiff instead of investigating B.S., a younger, less experienced employee. The plaintiff alleges that Berdon's conduct constituted a retaliatory discharge in violation of the ADEA, violated the TFA, and gave rise to several additional state law claims.

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

II

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the

4

most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

## III

### A

In the MTD Order, the Court concluded that the plaintiff had failed to plead adequately an age-based status claim under the ADEA because there was no plausible connection between the plaintiff's age and his discharge. MTD Order, 2021 WL 637974, at *2-3. The Court further concluded that any retaliation claim under the ADEA should be dismissed because the plaintiff had failed to plead that he had opposed any unlawful employment practice. Id. The plaintiff raises these claims again in the SAC, relying on substantially the same allegations that were contained in the Amended Complaint.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "In order to establish a prima facie case of age discrimination, the plaintiff must show (1) that [the plaintiff]

was within the protected age group, (2) that [the plaintiff] was qualified for the position, (3) that [the plaintiff] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Green v. Town of E. Haven, 952 F.3d 394, 403 (2d Cir. 2020). In particular, "a plaintiff alleging age discrimination under the [ADEA] must allege that age was the 'but-for' cause of the employer's adverse action." See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)); see also Lively v. WAFRA Inv. Advisory Grp., Inc., No. 19-cv-3257, 2020 WL 4038350, at *4 (S.D.N.Y. July 17, 2020).

The plaintiff has again failed to allege that age was a but-for cause of his termination. The SAC is bereft of new factual allegations that address any of the deficiencies identified in the MTD Order. Instead, the allegations in the SAC, like those in the Amended Complaint, taken as true, demonstrate that the plaintiff's termination was motivated not by age discrimination, but by the plaintiff's reporting of the purported misconduct of a colleague who happened to be younger than the plaintiff. See, e.g., SAC ¶ 9 (alleging that Berdon terminated the plaintiff's employment contract "in retaliation for disclosing to the Berdon managing tax partner, audit and tax malpractice and fraud committed by a Berdon employee-audit

principal"); ¶ 26 (stating that the reason proffered for the
plaintiff's termination was "code for the concept that [the
plaintiff] did not participate in a cover-up" and that "[t]he
timing of the employment discharge is no coincidence" because
the plaintiff was "terminated three days after B.S. completed
his coverup of accounting and tax fraud"); ¶ 28 ("[The
plaintiff] presented these issues to the audit principal, B.S.,
one week prior to [the plaintiff's] termination."); see also id.
at 7 n.2 (Berdon "had and has no valid reason to terminate [the
plaintiff] other than to cover-up professional malpractice and
tax fraud."). Accordingly, the complaint fails to allege age-
based discrimination in violation of the ADEA. See Lively, 2020
WL 4038350, at *4-6 (dismissing an ADEA claim for failure to
allege plausibly but-for causation).[3]

    In addition to a status-based claim, the SAC may be
construed to advance a retaliation claim under the ADEA. The
ADEA provides that it is "unlawful for an employer to
discriminate against any of his employees . . . because such
individual, member or applicant for membership has opposed any
practice made unlawful by this section, or . . . made a charge,
testified, assisted, or participated in any manner in an

---

[3] The plaintiff's arguments as to why this claim should not be dismissed
depend on the invocation of an incorrect legal standard. While the plaintiff
contends that his claim survives under a "mixed motive" causation analysis,
this argument is without merit. The law is clear that the plaintiff must
plausibly allege but-for causation in order to state a claim under the ADEA.
See, e.g., Vega, 801 F.3d at 86.

investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). "To state a claim for retaliation in violation of the ADEA, a plaintiff must plead facts that would tend to show that (1) [the plaintiff] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [the plaintiff] ; and (3) there exists a causal connection between the protected activity and the adverse action." Mabry v. Neighborhood Def. Serv., 769 F. Supp. 2d 381, 397 (S.D.N.Y. 2011) (citing Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007)). As to the protected activity element, the plaintiff must "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful" by the ADEA. Thomas v. Town of Southeast, 336 F. Supp. 3d 317, 327 (S.D.N.Y. 2018).

In the MTD Order, the Court dismissed the plaintiff's ADEA retaliation claim because the Amended Complaint contained no allegations that the plaintiff engaged in any activity protected by the ADEA. The SAC includes no new allegations that remedy this deficiency. Accordingly, the plaintiff could not have been retaliated against within the meaning of the ADEA.

The plaintiff was afforded an opportunity to replead these claims but was unable to allege a plausible claim under the ADEA. Accordingly, the plaintiff's claims arising under the ADEA are **dismissed with prejudice.**

8

**B**

In the SAC, the plaintiff advances a new claim arising under the TFA. The TFA was enacted on July 1, 2019 and amended portions of the Internal Revenue Code of 1986. See Pub. L. 116-25, 133 Stat. 981, enacted July 1, 2019. The plaintiff contends that his termination by Berdon violated a section of the TFA that provides as follows:

> (1) No employer, or any officer, employee, contractor, subcontractor, or agent of such employer, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment (including through an act in the ordinary course of such employee's duties) in reprisal for any lawful act done by the employee—
>
> > (A) to provide information, cause information to be provided, or otherwise assist in an investigation regarding underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud, when the information or assistance is provided to the Internal Revenue Service, the Secretary of the Treasury, the Treasury Inspector General for Tax Administration, the Comptroller General of the United States, the Department of Justice, the United States Congress, a person with supervisory authority over the employee, or any other person working for the employer who has the authority to investigate, discover, or terminate misconduct . . ..

26 U.S.C. § 7623(d)(1)(A).

The plaintiff's claim arising under the TFA should be dismissed for several reasons. First, the provisions of the TFA

upon which the plaintiff bases his claim took effect on the day that the TFA was enacted, July 1, 2019, which postdates the plaintiff's July 17, 2018 termination. See Pub. L. 116-25, Title I, § 1405(c)(2). Because the TFA was not in effect at the time that the plaintiff was terminated, the plaintiff cannot maintain a claim arising out of § 7623(d).[4]

Second, in order to bring a claim pursuant to this section of the TFA, the plaintiff was required to have filed a complaint with the Secretary of Labor within 180 days of his termination. See 26 U.S.C. § 7623(d)(2)(A). The plaintiff could only bring a claim under this section of the TFA in federal court if the Secretary did not issue a decision within 180 days after the plaintiff filed his complaint. Id. However, the plaintiff does not allege that he filed a complaint with the Secretary of Labor and the limitations period for doing so has long since passed. For these reasons, the plaintiff's claim must fail.

Finally, Berdon moved to dismiss the plaintiff's TFA claim in its motion to dismiss and the plaintiff failed to respond to

---

[4] The plaintiff has not argued that § 7623(d) should be applied retroactively. "As a general rule, a new statute does not apply retroactively to conduct that occurred prior to the statute's enactment." Ahmad v. Morgan Stanley & Co., Inc., 2 F. Supp. 3d 491, 496 (S.D.N.Y. 2014). "Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Id. Such language is absent here. Moreover, § 7623(d) attaches "new legal consequences to events completed before its enactment by increasing a party's liability for past conduct," which is further indicative that the presumption against retroactivity should apply. See id. Accordingly, Berdon cannot be liable under § 7623(d) for conduct that predated the provision's effective date. See id. at 496-99 (concluding that the Dodd-Frank Act's whistleblower retaliation provision did not apply retroactively).

Berdon's arguments or otherwise defend the claim in his opposition papers. Because the plaintiff abandoned this claim, it must be dismissed. See, e.g., Black Lives Matter v. Town of Clarkstown, 354 F. Supp. 3d 313, 318 n.1 (S.D.N.Y. 2018).

Although the plaintiff raised this claim for the first time in the SAC, it is clear that there are no amendments or additional factual allegations that could remedy the legal infirmities with the plaintiff's claim. Accordingly, the plaintiff's claim arising under the TFA is **dismissed with prejudice.**

**IV**

All the plaintiff's claims arising under federal law have been dismissed. Accordingly, unless the Court has diversity of citizenship jurisdiction or supplemental jurisdiction over the remaining state law claims, these claims must be dismissed for lack of subject matter jurisdiction.

Pursuant to 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over state law claims when the amount in controversy exceeds the sum or value of $75,000 and there is complete diversity of citizenship among the parties. "In an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced." Universal Licensing Corp. v. Paola Del Lungo, S.P.A., 293 F.3d 579, 581 (2d Cir. 2002). The plaintiff bears

the burden of showing that the Court has diversity of citizenship jurisdiction in this case. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In determining whether diversity jurisdiction exists, the Court may consider materials outside the pleadings. Id.

Diversity of citizenship "does not exist unless each defendant is a citizen of a different State from each plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). "For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998). Domicile is a person's fixed home and principal establishment, and to which, whenever he is absent, the person intends to return. Id. "At any one time, a party can have multiple residences but only one domicile." Galu v. Attias, 923 F. Supp. 590, 595 (S.D.N.Y. 1996). A limited liability partnership such as Berdon inherits the citizenship of all its members. See Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990).

In the SAC, the plaintiff contends that he is currently a domiciliary of South Carolina, but it is unclear what the plaintiff alleges his citizenship was at the time that this action was filed. Compare SAC ¶ 5 (alleging that the plaintiff is a "resident of New Jersey and maintains his domicile in South Carolina"), with Complaint at 5 (alleging that the plaintiff

"reside[s]" in both New Jersey and South Carolina), and Amended Complaint at 7 (same). The question of the plaintiff's citizenship is further complicated by the plaintiff's representations to other courts in other lawsuits.[5] For example, in Golub v. Swaaley, No. 16-cv-5386 (E.D.N.Y. filed Sept. 26, 2016), the plaintiff represented in his complaint that he resided in Staten Island, New York in 2016. Id. ECF No. 1. As recently as September 2021, the district court in that case mailed an order to the plaintiff's listed service address, which was also a Staten Island, New York address. Id. ECF Nos. 21, 41. Moreover, in another lawsuit in the District of Massachusetts, the plaintiff filed an amended complaint on December 12, 2019 - just over a month after the plaintiff initiated this action. See Golub v. Northeastern Univ., No. 19-cv-10478, ECF No. 33 (D. Mass. Dec. 12, 2019). In that amended complaint, the plaintiff alleged that he "was and is a resident of New York, New Jersey and South Carolina." Id. ¶ 5. The plaintiff's service address throughout that case was a New Jersey address.

In view of this conflicting evidence, the Court cannot determine where the plaintiff was domiciled at the time that this action was brought and therefore whether complete diversity of citizenship exists. Accordingly, the plaintiff is directed to

---

[5] The Court takes judicial notice of the materials filed in these other lawsuits pursuant to Federal Rule of Evidence 201. See Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint filed in another action).

provide evidence supporting his contention that he was domiciled in South Carolina at the time that he filed this action by May 20, 2022. See, e.g., Kennedy v. Trs. of Testamentary Trust of Will of Kennedy, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) ("Factors frequently taken into account in determining domicile include current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes. Courts also consider whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc."). Along with that evidence, the plaintiff is directed to submit an explanation as to how his contention that he was domiciled in South Carolina at the time that he filed the complaint in this action can be reconciled with his representations to the district courts in the Swaaley and Northeastern University actions.

By June 10, 2022, Berdon may respond to the plaintiff's submission and provide evidence to support its contention that there is no complete diversity of citizenship, which may, for example, take the form of a declaration attesting that at least one Berdon partner was domiciled in South Carolina at the time

14

that this action was filed. If the plaintiff fails to provide evidence that establishes at least a prima facie case of complete diversity, then the plaintiff will have failed to establish diversity of citizenship jurisdiction.

If there is no diversity of citizenship jurisdiction, and because there is no federal question jurisdiction, the Court would decline to exercise supplemental jurisdiction over the state law claims. Pursuant to 28 U.S.C. § 1367, federal courts can exercise supplemental subject matter jurisdiction over state law claims that derive from the same "common nucleus of operative fact" as the federal claims brought in the same action. Briarpatch Ltd., L.P. v. Phx. Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004). However, once the Court dismisses the federal claims, the Court may decline to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3); Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction." Kolari, 455 F.3d at 122 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining

to exercise jurisdiction over the remaining state-law claims." Id.

This is plainly the case here. After dismissing the federal claims, the Court's duty would be limited to considering state law claims. Such "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Furthermore, the pre-discovery stage of this litigation means that the factors of judicial economy, convenience, fairness, and comity point toward declining supplemental jurisdiction. See Page v. Oath Inc., No. 17-cv-6990, 2018 WL 1406621, at *4 (S.D.N.Y. Mar. 20, 2018), aff'd sub nom, Page v. United States Agency for Glob. Media, 797 F. App'x 550 (2d Cir. 2019). Therefore, the Court would not exercise supplemental jurisdiction over the plaintiff's state law claims in view of the fact that there is no federal question jurisdiction unless the plaintiff can establish that there is diversity of citizenship jurisdiction.

Accordingly, Berdon's motion to dismiss for lack of subject matter jurisdiction is denied without prejudice to seeking such relief after the parties make their respective submissions.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **granted in part and denied in part**. The plaintiff's federal causes of action are **dismissed with prejudice**. The parties are directed to file submissions with respect to diversity of citizenship jurisdiction as outlined above.

Copies of the unpublished opinions cited in this Memorandum Opinion and Order are attached. The Clerk is directed to mail of copy of this Memorandum Opinion and Order and its attachments to the pro se plaintiff and to note service on the docket. The Clerk is further directed to lift the stay of this action and to close all pending motions.

**SO ORDERED.**

Dated:    **New York, New York**
              **April 26, 2022**

                                      **John G. Koeltl**
                     **United States District Judge**

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 18 of 41

2021 WL 637974
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dr. J. David GOLUB, Plaintiffs,
v.
BERDON LLP, Defendant.

19-cv-10309 (JGK)
|
Signed 02/17/2021

**Attorneys and Law Firms**

David Golub, JD, Lake Hopatcong, NJ, pro se.

Laurent Scott Drogin, Jonathan Samuel Hershberg, Tarter Krinsky & Drogin LLP, Rebecca Rachel Hirschklau, New York City Law Department, New York, NY, for Defendant.

**MEMORANDUM OPINION AND ORDER**

JOHN G. KOELTL, District Judge:

 **\*1**  The pro se plaintiff, Dr. J. David Golub, brings this action against Berdon LLP ("Berdon") alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., and various state law violations arising from the termination of Golub's employment at Berdon. Berdon now moves dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Berdon also requests that the Court sanction Golub under its inherent authority. Golub moves for sanctions against Berdon pursuant to Federal Rule of Civil Procedure 11, as well as to strike certain filings, to admit three appendices into evidence, and to compel discovery.

For the reasons explained below, the motion to dismiss is **granted** and all other requests for relief are **denied**.

**I**

The following facts are drawn from the Amended Complaint ("Compl.") and are accepted as true for the purposes of this motion.

Golub, a "resident of New Jersey and South Carolina," worked as a tax accountant at Berdon, a limited-liability partnership focused on audit, tax, and consulting services; Berdon is alleged to "reside" in New York. Compl. ¶¶ 1, 5, 7, 9. Berdon engaged Golub initially as a consultant from July 2017 to March 2018 to facilitate a merger with another accounting firm, and then as an employee pursuant to a contract until his termination in July 2018. Id. ¶ 12. At the time of his discharge, Golub was over the age of 40 and had over 40 years of experience in accounting. Id. ¶ 2, 28.

In July 2018, Golub complained to Berdon's managing tax partner about alleged professional misconduct of a colleague, B.S. Id. ¶¶ 12, 20-26. In particular, Golub alleged that B.S. submitted fraudulent filings to the Internal Revenue Service ("IRS") and state government agencies. Id. ¶ 28. Shortly thereafter, Berdon terminated Golub's employment. Id. ¶ 19. When Golub asked for the grounds for the termination, Berdon's managing tax partner stated that he heard a recording of Golub reprimanding B.S.

using abusive language, and another employee stated that there was "an office cultural divide or disconnect and that [Golub] was not a 'team player.' " Id.

Golub alleges that Berdon ignored the issues he raised about B.S. and terminated Golub instead of investigating B.S., a younger, less experienced employee. Golub alleges that this amounted to a retaliatory discharge in violation of the ADEA. Id. ¶ 28. Golub further alleges that his termination violated the anti-retaliation provisions of the FCA, as well as New York and New Jersey whistleblowers laws. Id. ¶ 30. Lastly, Golub asserts state law claims of a breach of the covenant of good faith and fair dealing and breach of contract. Golub is seeking compensatory damages of $2,250,000 and punitive damages of $1,000,000. Id. at 20-22.

## II

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**\*2** While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13-cv-8560, 2014 WL 2134600, at \*1 (S.D.N.Y. May 22, 2014).

## III

### A

Berdon argues that the ADEA claim should be dismissed because there is no plausible connection between Golub's age and his discharge. While Berdon treats Golub's ADEA claim as a status-based claim of age discrimination, the complaint and the plaintiff's papers refers to both Golub's age-based status and retaliation, and the Court thus construes the claim as both a status-based claim and a retaliation claim under the ADEA.

The ADEA provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "In order to establish a prima facie case of age discrimination, the

plaintiff must show (1) that [the plaintiff] was within the protected age group, (2) that [the plaintiff] was qualified for the position, (3) that [the plaintiff] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Green v. Town of E. Haven, 952 F.3d 394, 403 (2d Cir. 2020). In particular, "a plaintiff alleging age discrimination under the Age Discrimination in Employment Act must allege that age was the 'but-for' cause of the employer's adverse action." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)); see also Lively v. WAFRA Inv. Advisory Grp., Inc., No. 19-CV-3257, 2020 WL 4038350, at *4 (S.D.N.Y. July 17, 2020).

Here, Golub failed to allege a plausible case of age discrimination. There's no question that Golub was within the protected age group, qualified for his position, and that he experienced an adverse employment action. However, the allegations in the complaint do not support an inference of discrimination, let alone that age was a but-for cause of the adverse employment action. Indeed, the only age-related allegation in the complaint is that Golub was older than another employee who was not terminated. But the complaint does not demonstrate any causal nexus between Golub's age and the termination. If anything, the complaint demonstrates that even Golub does not attribute his termination to age but rather to his reporting of the purported misconduct of a colleague who happened to be younger than Golub. See, e.g., Compl. ¶ 10 (alleging that the contract was terminated "in retaliation for disclosing to the Berdon managing tax partner, audit and tax malpractice and fraud committed by a Berdon employee-audit principal"); ¶ 26 (stating that the reason proffered for Golub's termination was "code for the concept that [Golub] did not participate in a cover-up" and that "[t]he timing of the employment discharge is no coincidence" because Golub was "terminated three days after B.S. completed his coverup of accounting and tax fraud"); ¶ 28 ("[Golub] presented these issues to the audit principal, B.S., one week prior to his termination."). Accordingly, the complaint fails to allege age-based discrimination in violation of the ADEA. See Lively, 2020 WL 4038350, at *4 (dismissing an ADEA claim for failure to allege but-for causation); Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc., No. 19-CV-6034, 2019 WL 6916099, at *5 (S.D.N.Y. Dec. 19, 2019) (same).

 **3**  In addition to a status-based claim, a plaintiff may bring a retaliation claim under the ADEA. The ADEA provides that it is "unlawful for an employer to discriminate against any of his employees ... because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or ... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act." 29 U.S.C. § 623(d). "To state a claim for retaliation in violation of the ADEA, a plaintiff must plead facts that would tend to show that (1) [plaintiff] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [plaintiff]; and (3) there exists a causal connection between the protected activity and the adverse action." Mabry v. Neighborhood Def. Serv., 769 F. Supp. 2d 381, 397 (S.D.N.Y. 2011) (citing Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007)). "As to the protected activity element ... the plaintiff need[s to] have had a good faith, reasonable belief that he was opposing an employment practice made unlawful" by the ADEA. Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006).

In this case, Golub's ADEA claim cannot survive as a retaliation claim. To the extent the complaint alleges retaliation, it was alleged to have occurred due to Golub's reporting of his colleague's professional misconduct and not because Golub opposed any unlawful employment practice. Because the complaint contains no reference to Golub participating in any activity protected by the ADEA, he could not have been retaliated against within the meaning of the ADEA.

Accordingly, the ADEA claim is **dismissed** without prejudice.


## B

Berdon argues that the retaliation claim under the FCA should be dismissed because Golub did not engage in a protected activity under the FCA.

In Section 3730(h), the FCA provides that "[a]ny employee ... shall be entitled to all relief necessary to make that employee ... whole, if that employee ... is discharged ... because of lawful acts done by the employee ... in furtherance of an action under [the FCA] or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h). A viable claim seeking such relief must show that "(1) [the employee] engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against [the employee] because he engaged in the protected activity." United States ex rel. Chorches v. Am. Med. Response, Inc., 865 F.3d 71, 95 (2d Cir. 2017).

Here, Golub alleged that, prior to his termination, he complained of another Berdon professional submitting fraudulent filings to the Internal Revenue Service ("IRS") and state government agencies. However, Golub does not show that his activity is protected under the FCA by virtue of either "further[ing] an action under [the FCA]" or "other efforts to stop 1 or more violations" of the FCA. 31 U.S.C. § 3730(h). While an actual FCA violation is not a prerequisite for a retaliation claim, the plaintiff is "required to show a good faith basis, or objectively reasonable basis, for believing that he or she was investigating matters in support of a viable FCA case." Weslowski v. Zugibe, 14 F. Supp. 3d 295, 311 (S.D.N.Y. 2014). The complaint does show how the alleged tax fraud could have supported a viable FCA case or that Golub had a good faith basis for believing so at the time.

Furthermore, it is difficult to see how Golub could ever demonstrate that his reporting was done in support of a viable FCA case. Pursuant to Section 3729(d), tax-related fraud is expressly excluded from the scope of the FCA. See 31 U.S.C. § 3729(d) ("This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986."); Hardin v. Scandinavia, 731 F. Supp. 1202, 1204 (S.D.N.Y. 1990) ("[I]ncome tax cases are not within the scope of § 3729."); see also United States ex rel. Lissack v. Sakura Glob. Capital Mkts., Inc., 377 F.3d 145, 157 (2d Cir. 2004) (clarifying that FCA claims that depend on establishing a violation of the tax code, even when not directly seeking to recover federal taxes, are barred by § 3729(d)). And because tax fraud is expressly excluded from the scope of the FCA, it is implausible that Golub's activity was an effort to stop the violation of the FCA and thus a protected activity.

**\*4** Accordingly, the retaliation claim under the FCA is **dismissed** without prejudice.

## IV

With respect to the remaining claims, all brought under various state laws, unless the Court finds that it has diversity jurisdiction, the Court must determine whether to exercise supplemental jurisdiction.

On questions of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). With regards to jurisdictional facts, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero), 600 F.3d 171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by the body of decisional law that has developed under Federal Rule of Civil Procedure 56. Kamen, 791 F.2d at 1011.

Pursuant to 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over state law claims when the amount in controversy exceeds the sum or value of $75,000 and there is complete diversity of citizenship among the parties. See Wash. Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126, 133 (2d Cir. 2020). Diversity of citizenship "does not exist unless _each_ defendant is a citizen of a different State from _each_ plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). "For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998). Domicile is a person's fixed home and principal establishment, and to which, whenever he is absent, the person intends to return. Id.

Alternatively, pursuant to 28 U.S.C. § 1367, federal courts can exercise supplemental subject matter jurisdiction over state law claims that derive from the same "common nucleus of operative fact" as the federal claims brought in the same action. Briarpatch Ltd., L.P. v. Phx. Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004). However, once the Court dismisses the federal claims, the Court may decline to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3); Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

Although the complaint alleges complete diversity in a conclusory fashion, the Court cannot ascertain from the facts alleged whether complete diversity exists. First, Golub states that he is a resident of New Jersey and South Carolina. However, "a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens." John Birch Soc'y v. Nat'l Broad. Co., 377 F.2d 194, 199 (2d Cir. 1967). Furthermore, "[a]t any one time, a party can have multiple residences but only one domicile." Galu v. Attias, 923 F. Supp. 590, 595 (S.D.N.Y. 1996). As such, Golub can only be a citizen of either New Jersey or South Carolina, but not both.

 *5  With respect to Berdon, the complain alleges that the company is a "resident" of New York. However, as a limited liability partnership, Berdon inherits the citizenship of all its members. See Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990). The complaint is silent on the citizenship of Berdon's members and the Court has no basis to conclude that they are all citizens of New York. Accordingly, it is not clear that the Court has diversity jurisdiction over the state law claims.

In the absence of diversity jurisdiction, because the Court has dismissed the federal claims brought in this action, it may decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." Kolari, 455 F.3d at 122 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of [these] factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n.7. This is plainly the case here. After dismissing the federal claims, the Court's duty would be limited to considering state law claims. Such "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Furthermore, the pre-discovery stage of the litigation means that the factors of judicial economy, convenience, fairness, and comity point toward declining supplemental jurisdiction. See Page v. Oath Inc., No. 17-cv-6990, 2018 WL 1406621, at *4 (S.D.N.Y. Mar. 20, 2018), aff'd sub nom, Page v. United States Agency for Glob. Media, 797 F. App'x 550 (2d Cir. 2019).

Accordingly, the state law claims are **dismissed** without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **granted** without prejudice. The plaintiff may file a motion to file an amended complaint together with a copy of the proposed amended complaint and an explanation why such filing is not futile. The motion must be filed within thirty (30) days of the date of this Memorandum Opinion and Order. If the plaintiff fails to move to file an amended complaint within that time, the claims will be dismissed with prejudice. The Clerk is directed to close Docket No. 47.

Furthermore, the Court denies all of the requests for ancillary relief. The actions by both sides are not so egregious as to warrant imposition of sanctions, and the plaintiff has not complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure. There is no basis to strike any documents submitted because the Court has not relied on them, nor is there a basis to admit specifically the appendices to the plaintiff's complaint. The appendices were submitted with the complaint and that is sufficient to put them in the record. There is no basis for discovery at this point.

**\*6  SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 637974

### Footnotes

1      Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal
       quotation marks in quoted text.

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4038350
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Francis P. LIVELY, Plaintiff,

v.

WAFRA INVESTMENT ADVISORY GROUP, INC. and Fawaz Al-Mubaraki, Defendants.

19-CV-3257 (JPO)
|
Signed 07/17/2020

**Attorneys and Law Firms**

John Charles Canoni, Stanton LLP, William Andrew Brewer, III, Donna Zinke, Brewer, Attorneys & Counselors, Dallas, TX, Farida Ali, Brewer Attorneys & Counselors, New York, NY, for Plaintiff.

Martin Flumenbaum, Brette Morgan Tannenbaum, Paul Weiss, New York, NY, for Defendants.

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

 **\*1**  Plaintiff Francis P. Lively, a real estate executive, files suit against his former employer WAFRA Investment Advisory Group, Inc. and its Chief Executive Officer Fawaz Al-Mubaraki. (Dkt. No. 1 ("Compl.").) Lively alleges that WAFRA discriminated against him on the basis of his age and retaliated against him for opposing such discrimination, both in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). (Compl. ¶¶ 33–43.) Lively also brings discrimination claims under state and city law and tort and contract claims under state law. (Compl. ¶¶ 44–103.) Defendants have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 39.) For the reasons that follow, the motion is granted.

**I. Background**

The following facts are drawn from the complaint, the answer, and the exhibits attached thereto. [1]

**A. Lively, His Time at WAFRA, and the Events Leading to His Termination**

Plaintiff Lively was sixty-four years old at the time he filed his complaint. (Compl. at 2.) Prior to his termination, he had been an employee at WAFRA for over twenty-one years. (Compl. ¶ 9.) While at WAFRA, Lively was hailed "as an invaluable member and leader of the Real Estate Division." (Compl. ¶ 11.) He was twice recognized by WAFRA's CEO Al-Mubaraki for his "exceptional work," first "by email in 2017, and again in 2018, during Lively's annual self-evaluation." (Compl. ¶ 11.) But in April 2018, once allegations of sexual harassment and discrimination were made against Lively by an underling, he was suspended without pay and, the next day, terminated for cause. (Compl. ¶ 12.) [2]

Despite a plethora of evidence indicating that Lively was fired for his inappropriate conduct, Lively maintains that Defendants gave him the boot on account of his age. (Compl. ¶ 13.) Further, Lively alleges that the allegations made against him were "manufactured" to serve as "pretext" in order to "fire him for being an older worker" (Compl. ¶ 16), and that his termination was really part of a larger campaign by WAFRA to "purge the company of [its] elder workers." (Compl. ¶ 17.)

**\*2**  To support these claims, Lively states that sometime after June of 2017 Al-Mubaraki "began making negative comments about Lively's age" and began expressing his desire to replace the older executives with "younger counterparts." (Compl. ¶ 13.) He cites only one specific instance where this occurred: a November 13, 2017, "after-hours gathering" where Al-Mubaraki "casually stated to Lively's son that WAFRA needed to replace older employees like his father with younger employees like Lively's son." (Compl. ¶ 14.) Additionally, Lively points to five other "senior executives" being "terminated or forced out" by WAFRA. (Compl. ¶ 17.)

Lively states that he reported Al-Mubaraki's "comments and stated plans to the Human Resources Director," the "Chief Operating Officer," and "a Senior Manager of WAFRA's parent company." (Compl. ¶¶ 19, 20.) The HR Director reportedly "expressed frustration that Al-Mubaraki *continued to engage* in inappropriate conduct." (Compl. ¶ 19 (emphasis omitted).) The COO reportedly "expressed forlorn acceptance of Al-Mubaraki's conduct and asked whether Lively reported his complaint to anyone else," to which "Lively responded by asking him if it mattered." (*Id.*) And the Senior Manager of the parent company "suggested that [Lively] view Al-Mubaraki's statement as humorous, or as a joke," to which Lively responded by saying "he did not see it as" a joke. (Compl. ¶ 19.) After no action was taken, Lively reportedly followed up with the HR Director and the COO, both of whom "continued to express their frustration with Al-Mubaraki's conduct but offered no remedy," leaving Lively in "fear[ ] that they would take no action regarding his complaint." (Compl. ¶ 22.)

### B. The Sexual Harassment and Discrimination Allegations

WAFRA's stated reason for terminating Lively is his violation of their policies and Code of Ethics in light of their investigation into the sexual harassment and discrimination allegations made against Lively by Sabine Kraut, who had worked under Lively in WAFRA's Real Estate Division for six years. (Answer at 1, 2.) In his complaint, Lively brushes off these allegations by claiming that Kraut "ha[d] regularly and voluntarily solicited [his] involvement in her personal and professional life," and that he "had no reason to believe that their interactions were anything but welcomed." (Compl. ¶ 16.) In its answer, WAFRA provides various documentary evidence, most of it penned or spoken by Lively himself, that negates these assertions.

First, and most revealing, is a transcript of a recorded conversation between Lively and Kraut that took place on October 26, 2017, in which Lively details his unreciprocated feelings for Kraut: "[A]s I said many times, it's obviously my issue, you don't have that issue, you don't have those feelings"; "[T]he bottom line is that there is no, that there's no back and forth here, it's a one way street and it's my issue and I'll deal with it"; "[L]ook, these are my feelings, that's all, you know. So, so they rejected ... and I don't know what to tell you, I mean, I wish I had better control of those emotions and feelings, you know, I certainly spent six years trying to control them"; "[I]t's the first time in a long time, I could stand in front of you and tell you, 'I like you, and you don't like me.' And that's hard to swallow"; "And you've done nothing to encourage it, it's my own stupidity, ok, I'm tripping over my own feelings." (Dkt. No. 25-1 at 6, 7, 9.) In the same conversation Kraut had told Lively that she wanted their interactions to be about "the business that it is supposed to be." (*Id.*)

WAFRA additionally provides eight notes handwritten by Lively and sent to Kraut in which he reiterates his feelings for her and, in some instances, accompanies the notes with unsolicited gifts. (*See* Dkt. Nos. 25-2, 25-3, 25-4, 25-5, 25-6, 25-7, 25-8, 25-9.) In a 2012 note, Lively tells Kraut "never have I loved and desired so much, but been so unrequited. That's you we're talking about and it is and will be what it is." (Dkt. No. 25-2 (emphasis omitted).) He goes on to state that if "we continue to work together, I will always have the small pleasures of innocently taking your hand to examine your thumb and with that touch, feeling 8 miles high, or taking your arm to whisper something to you at a meeting and catching that wonderful scent of you." (*Id.*) In another 2012 note, he calls her "hot as a firecracker." (Dkt. No. 25-6.)

**\*3**  Furthermore, after Kraut alerted WAFRA to Lively's conduct, she filed a complaint with the Equal Employment Opportunity Commission against WAFRA and Lively. (Answer at 5, 6.) In that EEOC complaint, Kraut provides additional details regarding Lively's alleged misconduct, such as Lively "forcibly kissing her" and "unexpectedly put[ting] his hand up [her] dress," among other things. (Dkt. No. 25-14 ¶¶ 11, 19.) After receiving a Notice of a Right to Sue from the EEOC (Answer at 6), Kraut then filed a lawsuit against WAFRA and Lively on the same grounds. (Dkt. No. 25-15.)

**C. The Aftermath of Lively's Termination**

Following his termination from WAFRA, Lively claims "WAFRA's employees published knowingly false statements about him" and that "WAFRA ... declared in press statements that it terminated Lively based on its 'investigation' into the complaint[s]" made against him. (Compl. ¶ 23.) *The Real Deal, Bisnow New York, Arab Times*, and *Bloomberg* all wrote articles on Lively's termination and the sexual misconduct claims made against him, all of which Lively attributes to an "animus-driven smear campaign" on the part of WAFRA. (Compl. ¶¶ 24, 25.) Per Lively, these publications resulted in "alienating [him] from any employment prospects within the real estate industry" (Compl. ¶ 25), and "interfere[d] with business relationships and prospective contracts to which [he] would have obtained substantial economic benefit." (Compl. ¶ 26.) Furthermore, Lively goes on to claim that "WAFRA [is] refus[ing] to recognize [his] entitlement to partnership and/or carried interests (*i.e.*, profit sharing in funds) relating to his work on several completed fund transactions." (Compl. ¶ 28.) According to Lively, both the "smear campaign" and the "refusal to recognize Lively's entitlement to partnership and/or carried interests" were "plainly motivated by WAFRA's animus against Lively based on age." (Compl. ¶¶ 25, 29.)

As a result, Lively initiated this lawsuit on April 11, 2019, by filing a complaint against WAFRA and Al-Mubaraki. Lively brings claims of age discrimination and retaliation, tortious interreference with prospective business or contractual relations, defamation per se, negligence, unjust enrichment, and quantum meruit. (Compl. ¶¶ 33–103.) Defendants have filed an answer and have moved for judgment on the pleadings. (Dkt. No. 39.) Plaintiff opposes the motion and, in the alternative, seeks leave to amend the complaint. (Dkt. No. 50.)

## II. Legal Standard

*Federal Rule of Civil Procedure 12(c)* authorizes the Court to grant judgment on the pleadings "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The movant must show that he or she "is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam). To determine whether the movant has made this showing, the Court applies the "same standard" it would apply to a *Federal Rule of Civil Procedure 12(b)(6)* motion to dismiss, " 'accept[ing] all factual allegations in the complaint as true and draw[ing] all reasonable inferences' in favor of the" nonmoving party. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).

On a *Rule 12(b)(6)* motion to dismiss, "although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions," *Hayden*, 594 F.3d at 161 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), and to facts "contradicted by more specific allegations or documentary evidence," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). Furthermore, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 678).

**\*4** Finally, "[o]n a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.' " *L-7 Designs, Inc.*, 647 F.3d at 422 (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). " 'A complaint is [also] deemed to include any ... materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.' " *Id.* (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). Importantly, a " '[p]laintiff['s] failure to include matters of which [she] had notice and which were integral to [her] claim — and that [she] apparently most wanted to avoid — may not serve as a means of forestalling the district court's decision.' " *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, F.2d 42, 48 (2d Cir. 1991)).

## III. Discussion

Lively brings federal claims under the ADEA, as well as various state and city claims. Each set of claims is discussed in turn.

### A. Federal Claims

Lively first asserts discrimination and retaliation claims against WAFRA pursuant to the ADEA. (Compl. ¶¶ 33–43.) Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Both of Lively's ADEA claims are subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010). Under this framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Id.* at 106. Once a plaintiff has successfully carried this burden, "the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for [the challenged employment] action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant is able to do so, then "the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's [action] was in fact the result of discrimination." *Id.*

Notably, a showing of a prima facie case of discrimination at the first step suffices to defeat a motion to dismiss. "*Iqbal* ... does not affect the benefit to plaintiffs pronounced in the *McDonnell Douglas* quartet." *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015). Just as the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment," so too does the "presumption ... reduce[ ] the facts needed to be *pleaded* [to defeat a motion to dismiss]." *Id.* In other words, to survive a Rule 12(b)(6) motion (and therefore a Rule 12(c) motion) in the ADEA context, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but instead "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 311.

With these principles in mind, the Court turns to an examination of the sufficiency of Lively's pleading with respect to his ADEA claims.

### 1. Age Discrimination Under the ADEA

Lively's first claim is that WAFRA discriminated against him on the basis of his age in violation of the ADEA. (Compl. ¶¶ 33–48.) To state an ADEA discrimination claim, a plaintiff must show that (1) she "was within the protected group"; (2) "she was qualified for the position"; (3) "she experienced [an] adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. In particular, the plaintiff must plausibly allege that age was the "but-for" cause of the adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

**\*5** Here, the complaint is devoid of facts plausibly alleging but-for causation. Lively's conclusory allegation, for example, that WAFRA was engaging in a "campaign to purge the company of elders workers" by "terminat[ing] or forc[ing] out many of its senior executives" (Compl. ¶ 17) does not suffice to meet his burden because the complaint lacks specific facts regarding "dates, ages, or reasons with respect to the termination of [the] other employees." *Marcus v. Leviton Mfg. Co.*, 661 F.App'x 29, 32 (2d Cir. 2016) (summary order). Such "skeletal pleading ... does not allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The complaint contains only one nonconclusory allegation in support of Lively's argument that age was the reason for his termination: his boss Al-Mubaraki's "making negative comments about [his] age." (Compl. ¶ 13.) Although Lively insinuates this was a regular occurrence (*id.*), he cites only one specific instance of this happening: a November 13, 2017, "after-hours gathering" where Al-Mubaraki allegedly told Lively's son that "WAFRA needed to replace older employees like his father with younger employees like Lively's son." (Compl. ¶ 14.) This alleged comment, however, was made almost six months before Lively was terminated. (*Id.*) The gap between the sole alleged comment and the subsequent termination is significant because " '[s]tray remarks ... are rarely given great weight, particularly if they were made temporally remote [from] the date of the

decision.' " *Campbell v. All. Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)); *see also Moore v. Verizon*, No. 13-CV-6467, 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (Sullivan, J.) ("[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence to support a case of employment discrimination.").

More importantly, any inference of but-for causation is undermined by the existence of a far more plausible cause of Lively's termination: the allegations of sexual harassment and discrimination made against Lively by another employee.[3] Nearly six months separate the alleged comment by Al-Mubaraki from Lively's termination (*see* Compl. ¶ 14.), while less than a month separates the claims of sexual misconduct made against Lively and his termination (*see* Answer at 2). A far stronger "nexus," then, exists between the sexual harassment claims against Lively and WAFRA's decision to discharge him. *Moore*, 2016 WL 825001, at *8 (quoting *Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 636 (S.D.N.Y. 2005)). The absence of a sufficiently strong nexus between Al-Mubaraki's alleged comment and Lively's termination renders the comment a "non-actionable stray remark[ ]." *Id.* at *9.

**\*6** Finally, the fact that Lively was replaced by someone "who is currently 66 years old — two years *older* than" he is (Answer at 17), fatally undermines his claim that Defendants wanted "to replace older employees like Lively with younger employees" (Compl. ¶ 14). *See Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 408–09 (2d Cir. 1991) ("[A] *prima facie* case of age discrimination ... requires a plaintiff ... to show ... that a younger individual has replaced her."); *Tarshis v. Riese Org.*, 195 F. Supp. 2d 518, 526 (S.D.N.Y. 2002) ("When a plaintiff has been replaced by someone older than himself, ... a fact-finder can draw no reasonable, immediate inference of discrimination.").

In short, Lively must plead sufficient facts plausibly suggesting that age — rather than, say, his violation of WAFRA's policies prohibiting sexual harassment and discrimination in the workplace — was the "but for" cause of his termination. As Lively has failed to plead any such facts, Defendant's motion for judgment on the pleadings on Lively's ADEA discrimination claim is granted.

### 2. ADEA Retaliation

Lively also contends that WAFRA retaliated against him in violation of the ADEA. (Compl. ¶¶ 39–43.) Retaliation claims under the ADEA are also subject to the *McDonnell Douglas* burden-shifting framework. *Gorzynski*, 596 F.3d at 110. "[F]or a retaliation claim to survive a motion for judgment on the pleadings ..., the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against him, (2) because he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (alteration in original) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 75, 90 (2d Cir. 2015)). With respect to causation, the Second Circuit has required that a showing "that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (quoting *Vega*, 801 F.3d at 91). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Id.*

Lively's retaliation claims fail because Lively has failed to adequately plead that his termination "would not have occurred in the absence of [a] retaliatory motive." *Id.* (quoting *Vega*, 801 F.3d at 91). He has pleaded no "direct evidence of retaliatory animus," *id.*, but has simply asserted in conclusory fashion that "[a]s a result of reporting Al-Mubaraki's misconduct ... WAFRA seized the opportunity to terminate Lively based on the basis of a false accusation of sex discrimination and harassment" (Compl. ¶ 21). Such a "threadbare recital[ ] of the elements of" an ADEA retaliation claim," "supported [only] by mere conclusory statements," is insufficient. *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 678).

Furthermore, the nearly six months that passed between Lively's reporting Al-Mubaraki's age-related comment in November 2017 and Lively's termination in May 2018 — especially in light of Al-Mubaraki's intervening praise for "Lively's substantial contributions and exceptional work" (Compl. ¶ 11) — undermines any plausible inference of causation arising from the "temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625; *see, e.g., Vaughn v. City of New York*, No. 06-CV-6547,

2010 WL 2076926, at *18 (E.D.N.Y. May 24, 2010) (rejecting "any reasonable inference of causal connection" between plaintiff's protected activities and the alleged retaliatory acts in part because of intervening "satisfactory year-end ratings"); *see also Dayes v. Pace Univ.*, 2 F. App'x. 204, 208 (2d Cir. 2001) (summary order) ("[T]he inordinate amount of time between [plaintiff's] complaint about the [supervisor's] conduct and [the supervisor's] negative review, especially given his intervening positive review, defeats [plaintiff's] attempt to establish a causal connection between the two events.").

**\*7** Once again, the only plausible conclusion to be drawn from the facts in the complaint, as supplemented with facts from the answer, is that Lively was terminated as a result of his violation of WAFRA's policies prohibiting sexual harassment and discrimination. Because Lively has not plausibly alleged that his having engaged in a protected activity was a "but-for" cause of his termination, Defendants' motion for judgment on the pleadings on Lively's ADEA retaliation claim is granted.

### B. Remaining Claims

Because Lively's federal claims are dismissed, the Court declines supplemental jurisdiction over Lively's remaining state and city claims. *See* 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Thus, pursuant to § 1367(c)(3), the Court declines jurisdiction over the remaining state-law claims.

### C. Leave to Amend

Finally, Lively requests leave to amend. Here, however, the Court does not find that the complaint "suggests that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Nor does Lively "suggest[ ] [any] new material [he] wishes to plead." *Id.* Accordingly, Lively's request to replead is denied as futile. *See id.*

## IV. Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED. Plaintiff's motion for leave to amend is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 39 and to close this case.

SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 4038350

### Footnotes

1    On a Rule 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009). Facts pleaded in the complaint are assumed true "unless contradicted by more specific allegations or documentary evidence." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

2    Lively calls attention to WAFRA's swift response to the allegations made against him numerous times throughout his complaint, as well as the fact that he "was terminated without the benefit of an investigation." (*See* Compl. ¶¶ 12, 15, 21.) WAFRA claims otherwise. (Dkt. No. 25 ("Answer") at 1.) In any event, these points are of limited relevance, especially

2020 WL 4038350

in light of the "Acknowledgement of Employee Handbook" signed by Lively in which he affirmed his understanding that "Wafra can terminate the employment relationship at any time, with or without cause and with or without advance notice, for any reason not expressly prohibited by *applicable* law." (Dkt. No. 25-13 at 5.)

3    The Court takes into consideration the exhibits attached to Defendants' answer detailing the sexual harassment and discrimination claims against Lively because they are " ' integral to [Lively's] ability to pursue' his cause of action" and because they "contradict[ ]" the allegations made in Lively's complaint. *L-7 Designs, Inc.*, 647 F.3d at 422 (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). Moreover, Lively "had notice [of the exhibit documents] well before [Defendants] attached them to [their] Answer (because [Lively authored, spoke,] sent or received them)." *L-7 Designs, Inc.*, 647 F.3d at 422. Finally, his desire "to avoid" their disclosure "may not serve as a means of forestalling [this Court's] decision." *Id.* (quoting *Cortec*, 949 F.2d at 44).

---

**End of Document**<span style="float:right">© 2022 Thomson Reuters. No claim to original U.S. Government Works.</span>

Page v. Oath Inc., Not Reported in Fed. Supp. (2018)
Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 31 of 41

2018 WL 1406621

2018 WL 1406621
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Carter PAGE, Plaintiff,

v.

OATH INC., et al., Defendants.

17 Civ. 6990 (LGS)
|
Signed 03/20/2018

**Attorneys and Law Firms**

Carter Page, New York, NY, pro se.

Stephen Seungkun Cha-Kim, United States Attorney's Office, New York, NY, for Defendants.

## OPINION AND ORDER

Lorna G. Schofield, United States District Judge

**\*1** Pro se Plaintiff Carter Page sues Defendants Oath Inc. ("Oath") and Broadcasting Board of Governors. Oath moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against it—defamation, tortious interference with business relations and terrorism transcending national boundaries. Oath's motion is granted.

## I. BACKGROUND

The following alleged facts are drawn from the Complaint and documents that are attached to the Complaint. The allegations are assumed to be true only for purposes of this motion, which tests the sufficiency of the Complaint. The facts are construed, and all reasonable inferences are drawn, in favor of Plaintiff as the non-moving party. *See Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017).

### A. The Parties Relevant to This Motion

Plaintiff Carter Page is a financial executive and foreign policy scholar. In 2008, he founded Global Energy Capital LLC, which specializes in investment advisory and direct investments in the energy sector worldwide. In early 2016, Plaintiff was an unpaid, informal advisor to the Donald J. Trump Campaign (the "Campaign"). Plaintiff never met nor spoke to Donald J. Trump.

Defendant Oath Inc. became a subsidiary of Verizon Communications Inc. as of June 13, 2017, and is a digital media company comprised of more than fifty media and technology brands. Non-parties Yahoo and HuffPost are separately incorporated subsidiaries of Oath.

### B. The Yahoo News Article

Page v. Oath Inc., Not Reported in Fed. Supp. (2018)

2018 WL 1406621

At the center of the Complaint is a news article published on September 23, 2016, by Yahoo News and titled "U.S. intel officials probe ties between Trump adviser and Kremlin" (the "Article"). The Article "falsely accused [Plaintiff] of participating in an alleged conspiracy to commit crimes against the U.S. Democratic Party's Leadership, not to mention a conspiracy to undermine American democracy and the 2016 U.S. election. With respect to [Plaintiff], these allegations were wholly and completely false."

The Article states, in relevant part, "U.S. intelligence officials are seeking to determine whether an American business man [Carter Page] identified by Donald Trump as one of his foreign policy advisers has opened up private communications with senior Russian officials...." The Article states that U.S. officials received intelligence reports that Page had a meeting in Moscow with Igor Sechin—a close Putin associate and the executive chairman of Russia's leading oil company, Rosneft—and a separate meeting with Igor Diveykin—a top Putin aide. With respect to Sechin, but not Diveykin, the Article used hedging language, stating "[t]hat meeting [with Sechin], if confirmed," and referring to the meeting as an "alleged meeting." Plaintiff never met or communicated with either Sechin or Diveykin.

The Article further states:

> The activities of Trump adviser Carter Page, who has extensive business interests in Russia, have been discussed with senior members of Congress during recent briefings about suspected efforts by Moscow to influence the presidential election, the sources said. After one of those briefings, Senate minority leader Harry Reid wrote FBI Director James Comey, citing reports of meetings between a Trump adviser (a reference to Page) and 'high ranking sanctioned individuals' in Moscow over the summer as evidence of 'significant and disturbing ties' between the Trump campaign and the Kremlin that needed to be investigated by the bureau.

**\*2** The Article also cites "[a] senior U.S. law enforcement official" who "did not dispute" that Plaintiff's alleged talks with senior Russian officials were being investigated.

In addition to the reported meetings between Page and the two Russian officials, the Article contains other false or misleading statements not critical to the resolution of this motion. Yahoo News knew that at least some of the statements in the article were untrue.

The Article was available on the Internet. The substance of the Article was republished (including by Oath subsidiary HuffPost) and made available worldwide, and it was translated into Russian and Ukrainian, sparking a "worldwide" controversy.

Following the Article's publication and republication, Plaintiff received "many" death threats, also described as "an escalating and sustained series of death threats," particularly in relation "to Defendant's false accusations that he met with Mr. Sechin and Mr. Diveykin." Plaintiff received a voicemail that included the following: "Go to trade out your [expletive] country for some [expletive] Russian dollars.... You think you're not, you know[,] you're not in [expletive] in cahoots with [expletive] Rosneft and every [expletive] Russian oligarch over there? .... If it was up to me, after we [expletive] tried you for treason, we'd take you out in the street and beat the [expletive] out of you with baseball bats." The allegedly defamatory articles also damaged Plaintiff's reputation "throughout the United States and around the world," resulting in several financial institutions and potential clients refusing to do business with Plaintiff and his company.

### C. The Complaint

On September 14, 2017, Plaintiff filed the Complaint, alleging defamation based on the Article and other articles published after June 2016, most of them authored by HuffPost "contributors." The Complaint also alleges that Defendant's publication of the Article and other articles constituted terrorism by creating a substantial risk of bodily injury to Plaintiff, and damaged Plaintiff's business relationships.

Page v. Oath Inc., Not Reported in Fed. Supp. (2018)

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 33 of 41

2018 WL 1406621

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the non-moving party's favor, *id.* at 104, but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotation marks omitted). The pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The Complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247–48 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (alteration omitted)).

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "The policy of liberally construing pro se submissions is driven by the understanding that implicit in the right to self-representation is an obligation ... of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 156–57 (internal quotation marks omitted).

## III. DISCUSSION

### A. Federal Claim Under the Anti-Terrorism Act

**\*3** The Complaint asserts one claim under federal law, a violation of the Anti-Terrorism Act ("ATA") based on Oath's alleged acts of terrorism transcending national boundaries. 18 U.S.C. § 2333. This claim fails as a matter of law.

Section 2333 of the ATA creates a civil cause of action for "[a]ny national of the United States [who is] injured in his or her person, property, or business by reason of an act of international terrorism...." Section 2331 defines "international terrorism" as activities that:

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(B) appear to be intended—

(i) to intimidate or coerce a civilian population;

(ii) to influence the policy of a government by intimidation or coercion; or

(iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum ....

The ATA thus has "four separate requirements" for an act to constitute international terrorism—"that the act at issue (1) involve violence or endanger human life; (2) violate federal or state criminal law if committed in the United States; (3) appear intended to intimidate or coerce civilian population, influence government policy, or affect government conduct by specified means; and (4) occur primarily outside the United States or transcend national boundaries." *Linde v Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012)).

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 34 of 41
Page v. Oath Inc., Not Reported in Fed. Supp. (2018)
2018 WL 1406621

The Complaint lacks sufficient factual allegations to state a claim under the ATA. Here, the alleged act of international terrorism committed by Oath is the publication of the Article, which included allegedly defamatory statements. The Complaint does not satisfy § 2333's second or third elements.

As to the second element, the publication of the Article is not, and is not alleged to be, a violation of any state or U.S. criminal law. *See Hollander v. CBS News Inc.*, No. 16 Civ. 6624, 2017 WL 1957485, at *1 (S.D.N.Y. May 10, 2017) (granting motion to dismiss where plaintiff alleged RICO violations against defendant news organizations based on their alleged "false and misleading" reporting of the 2016 U.S. presidential election), *vacated on other grounds sub nom. Hollander v Garrett*, 710 Fed.Appx. 35 (2d Cir. 2018) (summary order); *see also United States v. Alvarez*, 567 U.S. 709, 734 (2012) (Breyer, J. & Kagan, J., concurring in the judgment) (explaining that statutes criminalizing the utterance of false statements must be narrow as "the threat of criminal prosecution for making a false statement can inhibit the speaker from making true statements, thereby 'chilling' a kind of speech that lies at the First Amendment's heart").

Even if a criminal action against a media outlet could be based on fraud, the Complaint does not allege that the allegedly life threatening statements in the Article are not true. The Complaint alleges that Plaintiff received death threats primarily because of "Defendants' false accusations that he met with Mr. Sechin and Mr. Diveykin." The Article does not say that Plaintiff *actually* met with the two Russians, but rather that U.S. officials had received *reports* of such meetings. The substance and even headline of the Article express uncertainty about the occurrence and substance of any such meetings. That some readers may have assumed that the meetings occurred does not constitute fraud by the Article's publisher. The Complaint also does not dispute that "reports" were received, and instead confirms their existence; it describes the reports as "opposition political research by Christopher Steele ..., a consultant hired by associates and or/or supporters of the Clinton Campaign." The Complaint also alleges that the Article created a "deceitful implication that the documents referred to were actual U.S. Government reports," but the Article merely states that "U.S. officials have ... received intelligence reports...."[1]

**\*4** As to the third requirement for an act to constitute "international terrorism," the Complaint does not allege any facts that, if true, would show that the Article's publication was intended to intimidate or coerce the civilian population of the United States and foreign countries, or influence the policy of a government. The Complaint alleges these matters in an entirely conclusory manner. Even assuming without deciding that the publication of the Article "endangered human life" and "transcended national boundaries," the ATA claim fails as a matter of law.

## B. State Law Claims

In addition to the ATA claim, the remaining claims against Oath are state law claims of defamation and tortious interference with business relations. A district court may decline to exercise supplemental jurisdiction over claims arising under state law if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In considering whether to exercise supplemental jurisdiction, courts must consider "[judicial] economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). Considering these factors will usually lead to the dismissal of the non-federal claims when the federal claims have been dismissed at a relatively early stage. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Here, the federal claim against Oath is dismissed on a Rule 12(b)(6) motion, while discovery is stayed pending the resolution of this motion. It is therefore appropriate to decline to exercise supplemental jurisdiction.

## C. Leave to Replead

Plaintiff requests, in the event of dismissal, leave to file an amended complaint. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Leave to amend also may be denied where the plaintiff "fails to specify either to the district

Page v. Oath Inc., Not Reported in Fed. Supp. (2018)

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 35 of 41

2018 WL 1406621

court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

The Court believes that any effort to replead a federal claim against Oath or its subsidiaries would be futile, meaning that an amended complaint could not cure all of the infirmities described above. If Plaintiff believes otherwise, he may file a letter application (by sending it to the Pro Se Intake Office), not to exceed three, single-spaced pages, describing how he would amend the Complaint to state a federal claim against Oath or its subsidiaries. Any such application for leave to replead shall be filed as provided below.

## IV. CONCLUSION

The motion to dismiss the claims against Defendant Oath is GRANTED. If Plaintiff seeks to file an amended complaint, he shall file a letter application as described above on or before **April 20, 2018**. Pre-motion letters and a pre-motion conference are unnecessary.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1406621

## Footnotes

1    The Court also notes that the Complaint alleges that non-parties Yahoo and HuffPost—and not their corporate parent Oath—published the allegedly defamatory articles. The Complaint alleges in a conclusory fashion that Oath is responsible for the publications of its corporate subsidiaries, but it does not allege any facts that, as a matter of law, would warrant piercing the corporate veil or otherwise holding Oath responsible for the actions of Yahoo and HuffPost. *See Balintulo v. Ford Motor Co.*, 796 F.3d 160, 168 (2d Cir. 2015) ("While courts occasionally 'pierce the corporate veil' and ignore a subsidiary's separate legal status, they will do so only in extraordinary circumstances...."). For a claim to survive, it would have to be asserted against the party that committed the alleged wrong.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 36 of 41

Yajaira Bezares C. v. The Donna Karan Company Store LLC, Not Reported in...

2014 WL 2134600

2014 WL 2134600
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

YAJAIRA BEZARES C., Plaintiff,

v.

THE DONNA KARAN COMPANY STORE LLC, The Donna Karan Company LLC, Defendants.

Nos. 13 Civ. 8560(JGK), 13 Civ. 9123(JGK).
|
Signed May 21, 2014.
|
Filed May 22, 2014.

*MEMORANDUM OPINION AND ORDER*

JOHN G. KOELTL, District Judge.

**\*1** The plaintiff, Yajaira Bezares C., proceeding pro se, brought two actions against The Donna Karan Company Store LLC and The Donna Karan Company LLC (collectively, the defendants) in the New York State Supreme Court, Bronx County. In these actions, the plaintiff alleges employment discrimination, retaliation, and harassment under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the New York State Human Rights Law (N.Y.SHRL). The plaintiff also alleges state-law defamation.

The actions were removed to this Court under 28 U.S.C. § 1441. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the federal-law claims and supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law claims, except as indicated below. The defendant moves to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the defendant's motion is **granted.**

**I.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Id.*

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (citation and internal quotation marks omitted). "Even in a *pro se* case, however, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 37 of 41

Yajaira Bezares C. v. The Donna Karan Company Store LLC, Not Reported in...

2014 WL 2134600

statements, do not suffice." *Id.* (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

## II.

The plaintiff's two actions are directed at the same underlying conduct, (Minnah–Donkoh Decl. Exs. B, C), and the plaintiff's allegations are accepted as true for purposes of this Motion to Dismiss.

**\*2** The plaintiff is a Hispanic female born in 1976 and alleges that she has a disability under the NYSHRL. (Minnah–Donkoh Decl. Ex. D, Complaint to the New York State Division of Human Rights ("SDHR Compl.") at 1.) Prior to September 20, 2012, the plaintiff applied for employment with the defendants and her application was repeatedly turned down. (SDHR Compl. at 2, 3.)

The plaintiff alleges that, even though the plaintiff was experienced and highly qualified, the defendants did not hire her but hired a white woman instead because the latter "fits Donna Karan['s][i]mage better." (SDHR Compl. at 2.) This allegedly constituted age, disability, and racial discrimination against the plaintiff. (SDHR Compl. at 2.) The plaintiff also alleges conclusorily that the defendants retaliated against her. (SDHR Compl. at 2.) The plaintiff further alleges that the defendants "block[ed]" her from finding employment elsewhere in the fashion industry. (SDHR Compl. at 2; *see also* Minnah–Donkoh Decl. Ex. B at 5.)

The plaintiff filed a complaint with the SDHR on September 20, 2012, which was concurrently filed with the United States Equal Employment Opportunity Commission (EEOC). (*See* SDHR Compl. at 3; Minnah–Donkoh Decl. Ex. G at 1, Ex. H.) On March 2013, the SDHR issued its Determination and Order After Investigation, finding no probable cause to believe that the defendants had engaged in or were engaging in the alleged unlawful discriminatory practices. (Minnah–Donkoh Decl. Ex. G at 1.) On April 15, 2013, the EEOC adopted the SDHR's findings and issued a right-to-sue letter to the plaintiff. (MinnahDonkoh Decl. Ex. H.)

On November 12, 2013, the plaintiff commenced the first state court action in the New York State Supreme Court, Bronx County, claiming five billion dollars in damages. (MinnahDonkoh Decl. Ex. B at 1–2.) The defendants removed the action to this Court on December 2, 2013. (*See* Notice of Removal, Dec. 2, 2013, ECF No. 1 (13 Civ. 8560).) On December 1, 2013, the plaintiff filed another action in the New York State Supreme Court, Bronx County based on the same allegations, noting that she "need[ed][a] better judge." (*See* Minnah–Donkoh Decl. Ex. C at 1–2.) The defendants removed the second action to this Court on December 26, 2013. (*See* Notice of Removal, Dec. 26, 2013, ECF No. 1 (13 Civ. 9123).)

## III.

As an initial matter, the plaintiff argues that she "had not agreed [that this] case [ be] heard ... in [this] District Court" and that "her case is in [the New York State] Supreme Court presently against the defendants...." (Attach. to Pl.'s Opp'n at 4.) The Court construes this as a challenge to the removal, even though the plaintiff has not properly moved to remand.

"A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal ...." 28 U.S.C. § 1447(c). In this case, the plaintiff does not challenge subject matter jurisdiction, and this Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the federal-law claims and supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law claims. Thus, any challenge to the removal must be made within thirty days after the filing of the notice of removal. In this case, the notices of removal were filed on December 2 and 26, 2013, respectively, and the plaintiff's opposition papers are dated February 12, 2014–well over thirty days after the removal. Therefore, the plaintiff is precluded from challenging the propriety of the removal. *See Pierpoint v. Barnes,* 94 F.3d 813, 817 (2d Cir.1996) ("[I]n enacting § 1447 ... Congress placed a strict time limit on motions to remand...."); *Zerafa v. Montefiore Hosp. Hous. Co.,*

Yajaira Bezares C. v. The Donna Karan Company Store LLC, Not Reported in...

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 38 of 41

2014 WL 2134600

403 F.Supp.2d 320, 328 (S.D.N.Y.2005) (finding a waiver of the right to challenge removal because of the expiration of the thirty-day time limit). In any event, the plaintiff has not presented any basis to challenge the propriety of the removals in this case.

### IV.

**\*3** The plaintiff has not specifically identified the statutory bases for her claims in her state-court actions. Nevertheless, her complaint to the SDHR and the EEOC indicates that she alleges violations of Title VII, the ADEA, the ADA, and the NYSHRL. (*See* SDHR Compl. at 1; Minnah–Donkoh Decl. Ex. E.) All of these claims are barred.

### A.

An action alleging an employer's violations of the Title VII, the ADA, or the ADEA must be commenced within ninety days of the plaintiff's receipt of a right-to-sue letter from the EEOC, if such a letter is issued. 29 U.S.C. § 626(e) (ADEA); 42 U.S.C. § 2000e–5(f)(1) (Title VII); *id.* § 12117(a)(ADA); *Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 37 (2d Cir.2011) (Title VII and ADA); *Francis v. Elmsford Sch. Dist.,* 442 F .3d 123, 127 (2d Cir.2006) (ADEA). Absent substantiated challenges, courts generally presume that a rightto-sue letter from the EEOC is received three days after it is mailed. *See, e.g. Baldwin Cnty. Welcome Ctr. v.* Brown, 466 U.S. 147, 148 & 148 n. 1 (1984) (per curiam); *Johnson v. St. Barnabas Nursing Home,* 368 F. App'x 246, 248 (2d Cir.2010) (summary order); *Webster v. Potter,* 746 F.Supp.2d 635, 639–40 (S.D.N.Y.2010); *Molnar v. Legal Sea Foods, Inc.,* 473 F.Supp.2d 428, 430 (S.D.N.Y.2007).

In this case, the right-to-sue letter was mailed on April 15, 2013. (Attach. to Pl.'s Opp'n at 8.) The plaintiff does not claim that she did not receive the letter, which is included in her opposition papers and contains a clear notice that she must bring suit within ninety days of the receipt of the letter. (*See* Attach. to Pl.'s Opp'n at 8.) The plaintiff also does not dispute that she received the letter promptly after it was mailed. Thus, it is presumed that the plaintiff received the letter on April 18, 2013. The plaintiff did not commence her first action in the state court until November 12, 2013, (Minnah–Donkoh Decl. Ex. B at 1), which was well over ninety days after the receipt of the right-to-sue letter. Therefore, the plaintiff's Title VII, ADA, and ADEA claims are barred by the ninety-day statute of limitations. *See McFarland v. Metro N. Commuter R.R.,* 993 F.Supp. 210, 211 (S.D.N.Y.1998) (adopting recommendation of the Magistrate Judge and dismissing pro se plaintiff's discrimination and retaliation claims because of failure to bring suit within ninety days after the receipt of the EEOC right-to-sue letter). Accordingly, the defendants' motion to dismiss the Title VII, ADA, and ADEA claims is **granted.**

### B.

The plaintiff also alleges parallel claims of discrimination and retaliation under the NYSHRL, N.Y. Exec. Law §§ 290 *et seq. (See* SDHR Complaint at 1.) The NYSHRL contains an election-of-remedies provision, which provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, ... *unless* such person had filed a complaint hereunder or with any local commission on human rights...." N.Y. Exec. Law § 297(9) (emphasis added).

**\*4** The election-of-remedies requirement is jurisdictional: once a plaintiff files a complaint with the SDHR, federal and state courts are without subject matter jurisdiction to hear NYSHRL claims based on the same underlying conduct that gives rise to the SDHR complaint. *McGullam v. Cedar Graphics,* Inc.,609 F.3d 70, 74 n. 3 (2d Cir.2010); *Dimps v. N.Y. State Office of Mental Health,* 777 F.Supp.2d 659, 661 (S.D.N.Y.2011). "Courts generally recognize only two exceptions to this jurisdictional bar: (1) complaints filed with SDHR but dismissed for administrative convenience, and (2) a complaint filed with SDHR by EEOC." *Dimps,* 777 F.Supp.2d at 661.

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 39 of 41
Yajaira Bezares C. v. The Donna Karan Company Store LLC, Not Reported in...
2014 WL 2134600

In this case, the plaintiff does not dispute that she has filed a complaint with the SDHR for the same underlying conduct on which her NYSHRL claims in these actions are based. Indeed, her Summons and Notice filed on December 1, 2013 explicitly incorporates the SDHR complaint. (*See* Minnah–Donkoh Decl. Ex. C at 2.) The SDHR's dismissal was based on a finding of no probable cause and was not a dismissal for administrative convenience. (*See* Minnah–Donkoh Decl. Ex. G.) Therefore, the plaintiff's current actions are barred by the election-of-remedies provision, and neither of the exceptions to this jurisdictional bar applies. *See Dimps,* 777 F.Supp.2d at 661. Accordingly, the defendants' motion to dismiss the plaintiff's NYSHRL claims is **granted.** *See Higgins v. NYP Holdings, Inc.,* 836 F.Supp.2d 182, 187–88 (S.D.N.Y.2011).

### C.

The plaintiff also refers to "defamation." (*See* Minnah Donkoh Decl. Ex. C at 2.) The defendants move to dismiss any defamation claim based on the expiration of the applicable statute of limitations.

Under New York law, actions for defamation, including libel and slander, are subject to a one-year statute of limitations, measured from the date of publication of the allegedly defamatory statement. N.Y. C.P.L.R. § 215(3); *Blair v. Meth,* 977 N.Y.S.2d 318, 318 (App.Div.2013).

In this case, the plaintiff has not identified any defamatory statement or the publication thereof. The plaintiff's reference to defamation appears to be based on the same conduct alleged in her SDHR complaint, (*see* Minnah–Donkoh Decl. Ex. C at 2), which was filed in September 2012, (*see* SDHR Compl. at 3). Therefore, even if there were any defamatory statements, they must have been published in or prior to September 2012, which was more than one year before the plaintiff commenced her first state court action on November 12, 2013. (*See* Minnah–Donkoh Decl. Ex. B at 1.) Accordingly, the plaintiff's defamation claim is time-barred, and the defendants' motion to dismiss the defamation claim is **granted.**

### D.

Finally, the plaintiff refers to religious, gender, national origin, and "genetic" discrimination for the first time in her opposition papers. (Pl.'s Opp'n at 5.) The plaintiff has not identified the statutory bases for these claims. To the extent that federal laws are implicated, the religious, gender, and national origin discrimination claims arose under Title VII. *See* 42 U.S.C. § 2000e–2(a). Construed liberally to raise the strongest possible argument, the genetic discrimination claim may be deemed as arising under Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA), 42 U.S.C. § 2000ff *et seq.,* which prohibits genetic discrimination in employment.

**\*5** "As a prerequisite to filing suit under Title VII, a private plaintiff must first file a timely charge with the EEOC." *Chin v. Port Auth. of N.Y. & i N.J.,* 685 F.3d 135, 146 (2d Cir.2012) (citing 42 U.S.C. § 2000e–5(e)(1), (f)(1)), *cert. denied,* 133 S.Ct. 1724 (2013). The GINA incorporates by reference this requirement. 42 U.S.C. § 2000ff–6. Thus, a private plaintiff alleging genetic discrimination in employment under the GINA must also first file a timely charge with the EEOC. *See Macon v. Cedarcroft Health Servs.,* Inc., No. 12 Civ. 1481, 2013 WL 1283865, at \*6 (E.D.Mo. Mar. 27, 2013); *Ze–Ze v. Kaiser Permanente Mid–Atl. States Regions,* Inc., No. 10 Civ. 959, 2011 WL 320945, at \*4 (E.D .Va. Jan. 28, 2011).

In this case, the plaintiff's SDHR Complaint, which was also filed with the EEOC, does not contain specific allegations of religious, gender, national origin, or genetic discrimination. [1] Therefore, because the plaintiff has failed to exhaust administrative remedies as required by Title VII and the GINA, the plaintiff's religious, gender, national origin, and genetic discrimination claims are **dismissed.**

To the extent that the plaintiff's religious, gender, national origin, or genetic discrimination claims are asserted under the NYSHRL, *see* N.Y. Exec. Law § 296(1)(a) (prohibiting discrimination based on "creed," "sex," "national origin," and

Case 1:19-cv-10309-JGK-GWG   Document 86   Filed 04/26/22   Page 40 of 41
Yajaira Bezares C. v. The Donna Karan Company Store LLC, Not Reported in...
2014 WL 2134600

"predisposing genetic characteristics"), they are barred derivatively by the election-of-remedies provision of the NYSHRL. The election-of-remedies bar "precludes consideration of any claim ... under the NYSHRL ... arising out of the same incident on which [the plaintiff's] SDHR complaint was based." *Higgins,* 836 F.Supp.2d at 188 & 188 n. 2 (collecting cases). This is because the NYSHRL has been interpreted as "precluding an action in court that is 'based upon the same incident[ ]' as the [SDHR] complaint." *Id.* (citation omitted); *see also Emil v. Dewey,* 406 N.E.2d 744, 745 (N.Y.1980).

In this case, any alleged religious, gender, national origin, or genetic discrimination is based on the same underlying conduct as alleged in the SDHR Complaint, namely, that the defendants repeatedly refused to hire the plaintiff during the time leading up to the SDHR Complaint. Therefore, for the reasons explained above, the election of remedies bars these other claims. *See Higgins,* 836 F.Supp.2d at 190; *Alvarado v. Manhattan Worker Career Ctr.,* No. 01 Civ. 9288, 2002 WL 31760208, at *10–11 (S.D.N.Y. Dec. 10, 2002)* (claim barred by election of remedies so long as the claim arises out of the same discriminatory or retaliatory practice).

Moreover, the plaintiff has not alleged any facts to support a claim of religious, gender, national origin, or genetic discrimination under either federal or state law. The mere fact that she was repeatedly turned down for employment, without more, does not establish that the plaintiff was turned down "because of" her religious belief, gender, national origin, or genetic information, as required by the language of the statutes. *See* 42 U.S.C. §§ 2000e–2(a), 2000ff–1(a). Therefore, in addition to being barred by the statutory and jurisdictional requirements, the plaintiff's claims for religious, gender, national origin, and genetic discrimination must be dismissed because the plaintiff has failed to allege any facts to support such claims. *See Brodt v. City of New York,* ––– F.Supp.2d ––––, No. 13 Civ. 3272, 2014 WL 896740, at *5–6 (S.D.N.Y. Mar. 6, 2014) (dismissal of Title VII discrimination claim because no inference of discrimination could be drawn); *Higgins,* 836 F.Supp.2d at 190–91 (same); *Khaleel v. Metro One Loss Prevention Servs. Grps,* 469 F.Supp.2d 130, 133 (S.D.N.Y.2007) (same); *see also Allen v. Verizon Wireless,* No. 12 Civ. 482, 2013 WL 2467923, at *23–24 (D. Conn. June 6, 2013) (dismissal of GINA claim).

**\*6** Accordingly, the defendants' motion to dismiss the remaining claims (religious, gender, national origin, and genetic discrimination) is **granted.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted** and the complaints in both cases are **dismissed. The Clerk is directed to enter judgment in cases No. 13 Civ. 8560 and No. 13 Civ. 9123 and to close these cases.**

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2134600

## Footnotes

1    The plaintiff's SDHR Complaint states that she charges the defendants "with violating Title VII ... (covers race, color, creed, national origin, [and] sex relating to employment)." (SDHR Compl. at 1.) To the extent that this passing mentioning of "creed," "national origin," and "sex" in describing the scope of the statute can be construed as alleging

**Yajaira Bezares C. v. The Donna Karan Company Store LLC, Not Reported in...**
2014 WL 2134600

religious and gender discrimination, the plaintiff is barred from bringing suit based on that charge because she failed to bring suit within ninety days after the receipt of the right-to-sue letter, as explained above.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.